**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Kishorchandra Jekisandas Patel,<br><br>Debtor(s). | C/A No. 09-09601-JW<br><br>Chapter 7<br><br>**ORDER OVERRULING CHAPTER 7 TRUSTEE'S OBJECTIONS TO EXEMPTION** |

This matter comes before the Court on the Chapter 7 Trustee's Objections to Exemption (collectively, "Objection"). Kishorchandra Jekisandas Patel ("Debtor") filed a response to the Objection. This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.[1]

**FINDINGS OF FACT**

1. On December 23, 2009 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Michelle L. Vieira ("Trustee") was subsequently appointed as the Chapter 7 trustee in this case.

2. As of the Petition Date, Debtor was the owner and insured of a John Hancock life insurance policy (the "Policy"). The Policy was issued on November 1, 1992. Debtor's wife, Urmibeu K. Patel, is the primary beneficiary under the Policy, and

---

[1] The facts stated in this Order are taken primarily from the Joint Stipulation of Facts filed by Debtor and the Chapter 7 Trustee. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

Debtor's children, Kevin K. Patel and Kelly K. Patel are secondary beneficiaries. Debtor has been married to Urmibeu K. Patel since 1985.

3.  The Policy provides that that Debtor, as the owner of the Policy, retains the right to change the beneficiary during his lifetime. Neither Debtor nor Debtor's estate has ever been a named beneficiary under the Policy.

4.  The Policy further provides that the Debtor may receive the surrender value of the Policy on receipt of written notice before his death and upon surrender of the policy. The cash surrender value of the Policy as of the Petition Date totaled $24,168.59.

5.  It is stipulated by the parties that Debtor did not purchase the Policy, pay policy premiums, or take any other action under the Policy with the intent to defraud his creditors.

6.  In Schedule C – Property Claimed as Exempt, filed December 23, 2009, Debtor initially claimed an exemption for the entire cash surrender value of the Policy under S.C. Code Ann. § 38-63-40(C).[2] Debtor specified that he claimed such exemption as an "INSURED/OWNER."

7.  The Trustee timely filed her Objection to Exemption on March 2, 2010 on the grounds that the claimed statute does not exempt cash surrender value.

8.  After receiving the Trustee's Objection, Debtor amended his Schedule C on March 15, 2010 to claim an exemption as the "INSURED/OWNER" of the Policy for the entire cash surrender value under S.C. Code Ann. § 38-63-40(A), or alternatively, under S.C. Code Ann. § 15-41-30(A)(7) in the amount of $3,213.30 and under S.C. Code Ann. § 15-41-30(A)(9) in the amount of $4,125.00.

---

[2]   Debtor explained that his claim for an exemption under S.C. Code Ann. § 38-63-40(C) was the result of a typographical error.

9. The Trustee filed a second Objection to Exemption on March 19, 2010 as to Debtor's claim for an exemption under S.C. Code Ann. § 38-63-40(A).

**CONCLUSIONS OF LAW**

The Trustee contends that Debtor is not entitled to claim an exemption under S.C. Code Ann. § 38-63-40(A) as an owner, insured, or beneficiary. The Trustee, as the party objecting to the allowance of the exemption, bears the burden of demonstrating that the exemptions were improperly claimed. Fed. R. Bankr. P. 4003(c). Before addressing the merits of the Trustee's arguments, the Court will examine the terms of the Policy and the state exemption laws upon which Debtor relies.

*I.    The Policy*

The Policy at issue in this case is a whole life policy, which provides Debtor, as the owner of the Policy, with several financial options, including a cash surrender value benefit.[3] Under the terms of the Policy, the cash surrender value increases as the Policy premiums are paid. During his lifetime, Debtor may surrender the Policy and receive its cash surrender value. The surrender of the Policy and receipt of the cash surrender value would presumably terminate the coverage and therefore any benefit for the beneficiary under the Policy. If the Policy is not surrendered during the Debtor's lifetime, the beneficiary of the Policy would be entitled to receive the sum insured, $100,000, plus any other benefits, rights and privileges of the Policy ("Death Benefit") upon the death of Debtor. The Policy permits Debtor to change the beneficiary by providing written notice to the insurance company during his lifetime. Debtor's spouse is the current named beneficiary of the Policy. Debtor's two children are contingent beneficiaries of the

---

[3] It is critical to this Order that Debtor is also the insured under the Policy.

3

Policy, and as such, would only receive the Death Benefit in the event that their mother predeceased Debtor.

Section 541(a)(1) of the Bankruptcy Code provides that "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Since Debtor is the owner and insured of the Policy, his interest in the cash surrender value of the Policy is included as property of the bankruptcy estate. See In re Sims, 421 B.R. 745, 748 (Bankr. D.S.C. 2010) ("The interest of the owner of the insurance policy and the interest of the insured in [a whole life insurance] policy are property of the bankruptcy estate.") The Bankruptcy Code permits a debtor to exempt from property of the estate certain property for which an exemption is available under either state or federal law. See 11 U.S.C. § 522(b). Exemptions under the federal exemption statute, 11 U.S.C. § 522(d), may be claimed unless applicable state law restricts the debtor to the exemptions that are available under state law. In re Sanford, C/A No. 09-01116-jw, slip op. (Bankr. D.S.C. Oct. 1, 2009). South Carolina has opted out of the federal exemption scheme, therefore Debtor is limited to the exemptions provided under South Carolina law. See S.C. Code Ann. § 15-41-35 (providing that "[n]o individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in 11 U.S.C. § 522(d) except as may be expressly permitted by this chapter or by other provisions of law of this State.") Debtor has claimed an exemption for the entire amount of the cash surrender value of the Policy under S.C. Code Ann. § 38-63-40(A), as the owner and insured of the Policy. In the alternative, Debtor has claimed an exemption for the Policy in the amount of $3,213.30 under S.C. Code Ann. § 15-41-30(A)(7) and in the amount of $4,125.00 under S.C. Code Ann. § 15-41-30(A)(9).

The Trustee cites In re Sims, 421 B.R. 745 (Bankr. D.S.C. 2010) in support of her assertion that § 38-63-40(A) does not allow the debtor to claim an exemption as the "owner, insured, or beneficiary." In that case, the debtor husband was the owner and insured of a whole life insurance policy, which named the debtor wife as the beneficiary, and the debtor wife was the owner and insured of a separate whole life insurance policy, which named the debtor husband as the beneficiary. These policies both provided for a cash surrender value benefit. Each debtor, *as the beneficiary of the other's policy*, claimed the cash surrender value of the other's policy as exempt pursuant to § 38-63-40(A). Thus, the issue addressed by Judge Duncan in Sims was whether the beneficiary of a whole life insurance policy may exempt the cash surrender value of the policy under the plain meaning of § 38-63-40(A). In his analysis of this issue, Judge Duncan recognized that, despite the joint petition filed by these debtors, each debtor's estate was separate and "each property interest and each exemption stands on its own." He distinguished the property interest in a life insurance policy of an owner and insured from a beneficiary, noting that the interest of an owner and insured in a life insurance policy is property of the debtor's bankruptcy estate, while the interest of a beneficiary is inchoate and thus "there is nothing to exempt in or from this defeasible interest." Emphasizing that the statute specifically serves to protect proceeds of a policy from the claims of creditors of the insured, Judge Duncan concluded that a beneficiary cannot claim an exemption for the cash surrender value of a policy under § 38-63-40(A) to protect those proceeds from the creditors of the beneficiary. This Court agrees with the holding in Sims, but finds that this case presents an issue that was not raised or addressed by Sims:

5

*whether a debtor, as the owner and insured of the policy, may claim an exemption for the cash surrender value of a whole life insurance policy under § 38-63-40(A).*

## II. General Rules of Statutory Construction

When interpreting a state law, a federal court applies the statutory construction rules applied by the state's highest court. In re DNA Ex Post Facto Issues, 561 F.3d 294 (4th Cir. 2009) (citing Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc., 492 F.3d 484, 489 (4th Cir. 2007)).  Under South Carolina law, "[a]ll rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." State v. Sweat, 386 S.C. 339, 350, 688 S.E. 2d 569, 575 (2010) (quoting Broadhurst v. City of Myrtle Beach Election Comm'n, 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000)).  The words of a statute should be given "their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand that statute's operation." Sweat, 688 S.E.2d at 575. Legislative intent should be ascertained by examining the plain language of the statute. Hardee v. McDowell, 381 S.C. 445, 453, 673 S.E.2d 813, 817 (2009) ("What a legislature says in the text of a statute is considered the best evidence of legislative intent or will.")

## III. S.C. Code Ann. § 38-63-40(A)

Debtor contends that the plain language of S.C. Code Ann. § 38-63-40(A) provides an exemption for the cash surrender value of the Policy, which he can claim as the owner and insured under the Policy.  The statute provides:

> (A) Proceeds and cash surrender values of life insurance payable to a beneficiary other than the insured's estate in which such proceeds and cash surrender values are expressed to be for the primary benefit of the insured's spouse, children, or dependents are exempt from creditors of

6

>the insured whether or not the right to change the beneficiary is reserved and whether or not the policy is payable to the insured if the beneficiary dies first except:
>(1) if the insured has filed a petition in bankruptcy within two years of purchasing the insurance, such proceeds or cash surrender are only exempt as permitted by Section 15-41-30; or
>(2) the amount of premiums paid and interest thereon with intent to defraud creditors;
>(3) a creditor possessing a valid assignment from the policyowner may recover from either the cash surrender value or the proceeds of the life insurance policy the amount secured by the assignment with interest.

In response, the Trustee argues that S.C. Code § 38-63-40(A) only protects the beneficiaries of the Policy from claims of creditors of the insured.

Based on its examination of the language of the statute, the Court finds that the limited application of the statute proposed by Trustee is not supported by its terms. Section 38-63-40(A) plainly includes the "cash surrender value" of a life insurance policy within the category of property that is exempt under the statute. "Cash surrender value" is defined as "[t]he amount of money payable when an insurance policy having cash value, such as a whole-life policy, is redeemed before maturity or death." Black's Law Dictionary 1549 (7th ed. 1999). Under the terms of the Policy, the cash surrender value of a life insurance policy is a vested right belonging to the owner. The Policy provides that the cash surrender value will be paid "on receipt of written notice *before the Insured's death* and *on surrender of the policy*." Since the right to surrender the Policy and receive its cash surrender value may only be exercised during the lifetime of the Insured, it is not a right possessed by the beneficiaries of the policy. Where the right to change the beneficiary is reserved, the named beneficiaries have only inchoate rights in the policy during the lifetime of the insured. See In re Sims, 421 B.R. at 748 (citing Swygert v. Durham Life Ins. Co., 229 S.C. 199, 203, 92 S.E.2d 478, 480 (1956)). If the

7

Trustee's construction of the statute were adopted by the Court, it would render the provision regarding cash surrender value meaningless.  See Hartford Acc. & Indem. Co. v. Lindsay, 273 S.C. 79, 85, 254 S.E.2d 301, 304 (1979) ("Full effect must be given to each section of a statute, giving words their plain meaning, and, in the absence of ambiguity, words must not be added or taken away.")

The conclusion that § 38-63-40(A) provides an exemption for cash surrender value that may be claimed by the owner and insured is further supported by the inclusion of the provision that the exemption applies "whether or not the right to change the beneficiary is reserved." If the statute only applied upon the death of the insured, then this language would have no consequence.  At the death of the insured, beneficiaries are known and cannot be changed.  This clause only has significance if the statute allows an exemption in the cash surrender value of the policy during the life of the insured. Under such interpretation, the exemption would serve to protect the death benefit for the beneficiaries because the preservation of the cash surrender value ultimately results in the preservation of the death benefit for these beneficiaries. If a debtor was forced by the trustee to surrender the policy to obtain the cash surrender value to pay the claims of his creditors, the policy would terminate and there would be no benefit for the beneficiaries of the policy upon the death of the insured.  This interpretation is consistent with the apparent goal of this statute, which is to protect the value of the policy for a special class of beneficiaries (the insured's spouse, children and dependents) and thus prevent them from becoming dependent on the State for support upon the insured's death. See Hickman v. Hannover, 33 F.2d 873, 874 (4th Cir. 1928) (stating that "[exemption] statutes should receive a liberal construction in favor of the debtor in order to advance the

8

humane purpose of preserving to the unfortunate or improvident debtor or his family the means of obtaining a livelihood and prevent them from becoming a charge upon the public.")

### IV.    *S.C. Code Ann. § 15-41-30(A)(9)*

The Trustee contends that S.C. Code Ann. § 15-41-30(A)(9)[4] provides the only specific exemption for life insurance policies that may be claimed by Debtor as the owner and insured.[5] The Trustee argues that Debtor's interpretation of § 38-63-40(A) would render § 15-41-30(A)(9) meaningless and would conflict with the rule of statutory construction that statutes dealing with the same subject matter must be construed together, if possible, to produce a single, harmonious result. See Grant v. City of Folly Beach, 346 S.C. 74, 79, 551 S.E.2d 229, 231 (2001).

The Court disagrees with the Trustee's argument that Debtor's interpretation of § 38-63-40(A) renders § 15-41-30(A)(9) meaningless. Section 38-63-40(A) specifically provides that "if the insured has filed a petition in bankruptcy within two years of purchasing the insurance, such proceeds or cash surrender are only exempt as permitted by Section 15-41-30." The General Assembly's specific reference to § 15-41-30 within § 38-63-40(A) indicates that it was fully aware of the different exemption provided by

---

[4]    Section 15-41-30(A)(9) provides:

(A) The following real and personal property of a debtor domiciled in this State is exempt from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding:
…
(9) The debtor's aggregate interest, not to exceed in value four thousand dollars less any amount of property of the estate transferred in the manner specified in Section 542(d) of the Bankruptcy Code of 1978, in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

[5]    The Trustee does not dispute the Debtor's right to claim a "wild card" exemption under S.C. Code Ann. § 15-41-30(a)(7).

9

§ 15-41-30(A)(9). It appears that the inclusion of an exception to the exemption provided by § 38-63-40(A) was intended to address the issue of potentially abusive exemption planning—where a debtor takes a non-exempt asset and purchases a life insurance policy with a cash surrender value on the eve of bankruptcy to protect that asset from the claims of his creditors.[6] The General Assembly thus provided that where an insured purchases a policy within two years of filing bankruptcy, the insured may only claim an exemption under the more limited general exemption statute, § 15-41-30. In this circumstance, § 15-41-30 would plainly have meaning and would not be superfluous.[7] Furthermore, it is reasonable to infer from the General Assembly's inclusion of a specific exception to § 38-63-40(A) where the insured files a petition for bankruptcy within two years of purchasing the policy that it contemplated an inverse result in the bankruptcy case of an insured who purchased a policy *more than* two years before filing a bankruptcy petition.

While there is some overlap between the application of the two statutes, they are not in conflict and can be read together to achieve a harmonious purpose. Section 38-63-40(A) only applies when the beneficiaries of the policy are the "spouse, children, or dependents" of the insured. Section 15-41-30(A)(9), by contrast, appears to apply regardless of who the insured owner lists as a beneficiary. To give effect to § 38-63-40(A), when its specific requirements are satisfied, comports with the well established rule of statutory construction that specific statutory provisions prevail over more general

---

[6] The second exception to § 38-63-40(A) also serves to mitigate the potential for abuse by providing that the exemption does not apply to the amount of premiums paid and interest thereon with intent to defraud creditors.

[7] It further appears that § 15-41-30(A)(9) would also provide an exemption in cases where the debtor was the owner of the life insurance policy but the insured was an individual of whom the debtor is a dependent. See § 15-41-30(A)(9) (providing exemption in any accrued dividend or interest, or loan value of, any unmatured life insurance contract *owned* by the debtor under which the insured is the debtor *or an individual of whom the debtor is a dependent*). In this situation, § 38-63-40(A) would apparently not apply because § 38-63-40(A) only provides an exemption from claims of "creditors of the insured" and the debtor would not be the insured.

ones. Spectre, LLC v. S.C. Dept. of Health and Envtl. Control, 386 S.C. 357, 372, 688 S.E.2d 844, 852 (2010) ("Where there is one statute addressing an issue in general terms and another statute dealing with the identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect.").

### V.     *"Payable to a Beneficiary" Requirement*

The Trustee further argues that because the statute uses the phrase "[p]roceeds and cash surrender values of life insurance *payable to a beneficiary*," the exemption only applies once the benefits become payable to the beneficiary—that is, only after the insured has died and the beneficiary becomes entitled to the proceeds. While this construction is sensible when discussing proceeds, it leads to unreasonable results when discussing cash surrender value because cash surrender value, by definition, is never "payable to" the beneficiary. This interpretation also does not comport with the rule of last antecedent, a rule of grammatical construction, which provides that a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows. U.S. v. Hayes, 129 S. Ct. 1079 (2009). Under this rule of construction, "payable to a beneficiary" would modify the word "insurance" instead of the more distant words of "proceeds and cash surrender values" since "insurance" is the immediate antecedent. Accordingly, the reference to "payable to a beneficiary" would serve to designate the specific insurance policy to which the statute applies—that is, an insurance policy payable to a beneficiary as opposed to the debtor's estate. See In re Shethi, 389 B.R. 588, 609-610 (Bankr. N.D. Ill. 2008) (rejecting the trustee's argument that the cash surrender value had to be presently payable to the beneficiaries, and finding

11

that the phrase "payable to" merely designated the class of beneficiaries that would render a policy exempt). The immediately following language of the statute adds the requirement that the beneficiary of the insurance policy must be the insured's spouse, children, or dependents, and not the insured's estate. See  § 38-63-40(A) ("Proceeds and cash surrender values of life insurance *payable to a beneficiary* other than the insured's estate *in which such proceeds and cash surrender values are expressed to be for the primary benefit of the insured's spouse, children, or dependents* are exempt…."); see also In re Sims, 421 B.R. at 751 ("Section 38-63-40(A) S.C. Code Ann. applies to life insurance payable to a beneficiary, but not the insured's estate, when the death benefit and cash value are expressly designated for the insured's spouse, children or dependents. The benefit and cash value of these two policies are so payable.")

### VI. *Legislative History*

The legislative history also indicates that an exemption for cash surrender value was intended to be provided by § 38-63-40. The first version of this exemption statute, Section 7985 of the Code of Laws of South Carolina (1932), made no mention of "cash surrender value." The Supreme Court relied on this omission when it concluded that section 7985 did not provide an exemption for cash surrender value in Wilson v. Mut. Ben. Life Ins. Co. of Newark, N.J., 182 S.C. 131, 135, 188 S.E. 803, 804 (1936), stating:

> The Legislature has not by the slightest inference referred to the cash surrender value of an insurance policy, but it has expressly provided that the insurance becoming due and payable under the terms of the policy shall be payable to the parties named therein free and discharged of all claims of the insured's creditors or his personal representatives. We think that it was the intent of the Legislature to provide for an insured's widow and his or their children by securing to them at the time of his death, the benefits of the proceeds of insurance policies in force coming within the category provided by said section, and therefore, the statute does not apply to the facts of this case.

The term, "cash surrender value," first appeared in the 1988 version of the statute, S.C. Code § 38-63-40,[8] which was adopted by the General Assembly and signed by the Governor as part of 1988 Act No. 305, § 1. The 1988 version provided an exemption for "cash surrender value of life insurance in the aggregate amount of not more than fifty thousand dollars." In 1993, the General Assembly enacted the current version of S.C. Code Ann. § 38-63-40 as part of 1992 Act No. 89, § 1, which removed the fifty thousand dollar limitation on the cash surrender value exemption and added several key provisions to the statute. Specifically, the General Assembly provided that proceeds and cash surrender values were protected "whether or not the right to change the beneficiary is reserved" and "whether or not the policy is payable to the insured if the beneficiary dies first" and added an exception in cases where "the insured has filed a petition in bankruptcy within two years of purchasing the insurance," in which case "such proceeds or cash surrender are only exempt as permitted by Section 15-41-30." These amendments indicate a specific intent by the General Assembly to create an exemption in the statute for cash surrender value.

Although the exemption statutes addressing life insurance vary widely from state to state, the case law interpreting these statutes does provide some guidance. See In re

---

[8] The 1988 version of § 38-63-40 provided:
The proceeds and cash surrender value of life insurance in the aggregate amount of not more than fifty thousand dollars upon the life of an individual, which has already been or may be taken out, in which it is expressed to be for the primary benefit of the insured's spouse, children, or dependents inure to the use and benefit of the individual or individuals for whose use and benefit it is expressed to be taken out, and the sum or net amount of the insurance becoming due and payable by the terms of the policy is payable to the individual or individuals as stated in this section, free and discharged from the claims of the representatives of the insured or of any of the insured's creditors or a person claiming by, through, or under him or them or any of them unless:
(1) the policy was obtained with the intent to defraud creditors; or
(2) the creditor or representative possesses a valid assignment of the cash surrender value of the policy from the policyholder on a separate form.
In these two instances, the creditor may recover from either the cash surrender value or the proceeds of the life insurance policy of the amount secured by the assignment.

Sims, 421 B.R. at 753 ("Cases construing life insurance exemption statutes in other states also aid the court in construing [§ 38-63-40(A)].") Other courts addressing similar exemption statutes have concluded that a debtor may claim an exemption for cash surrender value as the owner and insured of the policy. In re Johnson, 274 B.R. 473, 475-76 (Bankr. E.D. Mich. 2002) (holding that where the debtor is the owner of a policy insuring his own life and listing his wife as the beneficiary upon his death, the proceeds of the policy, including the cash value thereof, are exempt from the claims of the insured's creditors); In re Grace, 273 B.R. 570, 572 (Bankr. S.D.Ill. 2002) (holding that the debtor-insured was entitled to exempt the cash surrender value of her life insurance policy naming her dependent son as a beneficiary under Illinois statute providing exemption for "all proceeds payable because of the death of the insured and the aggregate cash value of any or all life insurance… policies … payable to a wife or husband of the insured, or to a child, parent, or other person dependent upon the insured"); In re Henderson, 167 B.R. 67, 73 (Bankr. N.D. Miss. 1993) (concluding that unless the creditor's claim is in the nature of alimony, support, or something akin thereto, the cash surrender value of a policy insuring the life of the debtor can be claimed as exempt by the debtor-owner of the policy under Miss. Code Ann. § 85-3-11); In re Reif, No. 05-36514, 2007 WL 2071808 (Bankr. D.Md. July 16, 2007) (denying the debtor's claimed exemption in cash surrender value of a policy insuring his life because debtor's trust was the beneficiary of the policies, but explaining that "had the policies provided that the beneficiaries were the debtor's spouse, dependent children, or other dependent relative, their cash surrender value would have been protected from creditors of the debtor, and hence, his trustee.")  Several courts find cash surrender value to be exempt even when

14

the words "cash surrender" are not included within the exemption statute, finding that cash surrender value is encompassed within the terms "proceeds and avails" or "proceeds and benefits." See In re Billington, 376 B.R. 239, 241 (Bankr. M.D. Tenn. 2007) (holding that the Tennessee statute providing an exemption for a life insurance policy made for the benefit of the insured's spouse and/or children, or dependent relatives, allows for the exemption of the cash surrender values of such policies); In re Sloss, 279 B.R. 6 (Bankr. D. Mass. 2002) (holding that Mass. Gen. Law 175, §§ 125 should be construed to exempt the cash surrender value held by the owner-insured in order to fully protect a beneficiary's interest in a life insurance policy, even though the statute refers only to "proceeds"); In re Davis, 275 B.R. 134, 141 (Bankr. D. D.C. 2002) (holding that a debtor in bankruptcy may claim as exempt the cash surrender value of a life insurance policy insuring the life of the debtor that is payable to a beneficiary other than the debtor under D.C. Code Ann. § 31-4716(a)(2001), despite the absence of the term "cash surrender" from the statute). Unlike the statutes in these jurisdictions, § 36-63-40(A) specifically refers to "cash surrender value." The Court is unaware of any insurance exemption statute that has been held not to protect cash surrender value where the statute specifically used the words "cash surrender value" or "cash value" to describe the category of property protected by the statute.

## CONCLUSION

Based on the foregoing, the Court concludes that if the requirements of S.C. Code Ann. § 38-63-40(A) are satisfied, the owner and insured of a life insurance policy may claim an exemption for the cash surrender value of the policy. The requirements of § 38-63-40(A) appear to have been satisfied in this case. Accordingly, the Trustee's Objection

to Exemption is overruled and Debtor's claim for an exemption under § 36-63-40(A) for the entire cash surrender value of the Policy is allowed.

        **AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**06/11/2010**



Entered: 06/11/2010

*/s/ John E. Waites*

Chief US Bankruptcy Judge
District of South Carolina